UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JONATHON COTTRELL, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 1:13-cv-01651-TWP-DML ) |
| CAROLYN W. COLVIN, Commissioner of the Social Security Administration, | ) ) ) ) ) |
| Defendant. | ) |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Jonathon Cottrell ("Mr. Cottrell") requests judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), denying his application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"), and for Supplemental Security Income ("SSI") under Title XVI of the Act.[1] For the following reasons, the Court **AFFIRMS** the decision of the Commissioner.

### I. BACKGROUND

**A.  Procedural History**

On October 16, 2009, Mr. Cottrell filed applications for DIB and SSI, alleging a disability onset date of November 1, 2005. His claims initially were denied on January 29, 2010, and again on reconsideration on March 25, 2010. Mr. Cottrell filed a written request for a hearing. On March 16, 2011, a hearing was held via video conference before Administrative Law Judge William M. Manico (the "ALJ"). Mr. Cottrell participated in the hearing and was represented by counsel. On

---

[1] In general, the legal standards applied are the same regardless of whether a claimant seeks Disability Insurance Benefits or Supplemental Security Income. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted decisions.

March 28, 2011, the ALJ denied Mr. Cottrell's applications for DIB and SSI. On August 27, 2013, the Appeals Council denied Mr. Cottrell's request for review of the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. On October 16, 2013, Mr. Cottrell filed this action for judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

**B.      Factual Background**

At the time of his alleged disability onset date, Mr. Cottrell was 48 years old, and he was 54 years old at the time of the ALJ's decision. Mr. Cottrell received a GED through the military. His employment history includes working as a machine operator, forklift operator, and custodian. His last employment was with a temporary employment agency doing labor jobs, but he worked only a half day and left because of pain in his back and hips. Mr. Cottrell has not worked since 2005.

Mr. Cottrell suffers from degenerative disc disease and rheumatoid arthritis, resulting in pain and problems in his lower back, lower spine, hips, knees, and ankles. He also suffers from peptic ulcers. Mr. Cottrell has an organic mental disorder (attention deficit hyperactivity disorder), an affective disorder (major depressive disorder), and an anxiety related disorder (post-traumatic stress disorder ("PTSD")). He takes medication to treat his depression.

Mr. Cottrell began experiencing back and neck pain in 1995. He asserts that his pain became debilitating in 2005, leading to an inability to work. His medical records show that Anthony A. Smith, M.D. ("Dr. Smith") performed a neurologic evaluation of Mr. Cottrell in April 2009. Dr. Smith observed that Mr. Cottrell's gait and station were antalgic, meaning they were abnormal in order to avoid pain while walking or standing. Dr. Smith gave the opinion that Mr.

Cottrell had diffuse radiculopathy,[2] resulting in a "marked reduction in residual functional capacity." (Filing No. 13-7 at 2.) He noted that Mr. Cottrell "may need EMG studies to further evaluate his symptoms." *Id.*

A May 11, 2009 electromyographic ("EMG")[3] test showed "bilateral irritative changes, multiple lumbosacral spinal nerve roots." (Filing No. 13-7 at 5.) An August 24, 2009 lumbar spine MRI showed "stable minimal degenerative changes." (Filing No. 13-7 at 10.) And an August 24, 2009 thoracic spine x-ray showed "no evidence of a compression fracture or disc space narrowing" and "no significant degenerative changes." (Filing No. 13-7 at 11.)

On August 24, 2009, Mr. Cottrell saw pain management specialist Peter Klim, D.O. ("Dr. Klim") (Filing No. 13-7 at 12–14). Mr. Cottrell denied any neurological symptoms, and his physical examination was normal, including a slow, stable gait, normal strength and muscle tone, normal sensation, and negative straight leg raising. Mr. Cottrell refused to attempt lumbar extension or rotation because of fear of experiencing back pain.

On October 29, 2009, shortly after Mr. Cottrell had submitted his applications for DIB and SSI, Dr. Smith opined that Mr. Cottrell would be "unable to tolerate [light work] even for a single day" because of nerve root irritation in his neck and back (Filing No. 13-9 at 86). Dr. Smith also completed a "Medical Assessment of Ability to do Work-Related Activities" in which he opined that Mr. Cottrell could occasionally lift and carry up to ten pounds, sit for one hour at a time and

---

[2] Radiculopathy is a condition resulting from a compressed nerve in the spine that causes pain, numbness, tingling, or weakness along the course of the nerve. It can occur in any part of the spine but is most common in the lower back (lumbar radiculopathy) and neck (cervical radiculopathy). It seldom occurs in the middle portion of the spine (thoracic radiculopathy). *See* http://www.medicinenet.com/radiculopathy/article.htm.

[3] "An electromyogram (EMG) measures the electrical activity of muscles at rest and during contraction." An EMG is conducted when pain or numbness is experienced to determine how the nerves are affected. An EMG shows the level of functioning of nerves and helps find diseases that damage muscle tissue, nerves, or the junctions between nerves and muscles. *See* http://www.webmd.com/brain/electromyogram-emg-and-nerve-conduction-studies.

only two hours total in an eight-hour workday, stand or walk for one hour at a time and one hour total in an eight-hour workday, and occasionally use his hands for grasping and fine manipulation (Filing No. 13-9 at 88–91). He further opined that Mr. Cottrell could never stoop, crouch, kneel, or crawl, and could only occasionally reach, handle, feel, push, and pull. *Id.*

Dr. Klim's medical record for Mr. Cottrell's October 20, 2009 office visit noted lumbar spine tenderness and a gait imbalance but normal sensation (Filing No. 13-8 at 80–81). Dr. Klim recommended a lumbar facet joint nerve block procedure with a follow-up appointment to assess Mr. Cottrell's response to the injections. *Id.* On November 4, 2009, Mr. Cottrell underwent surgery with fluoroscopy to inject nerve blocks (Filing No. 13-8 at 83–84).

At Mr. Cottrell's follow-up appointment on December 29, 2009, Dr. Klim noted that Mr. Cottrell realized more than 80% pain relief from the procedure for the duration of the local anesthetic. His back pain had since returned, but he explained that he had fallen on ice the week before. Dr. Klim noted that Mr. Cottrell's gait and station were normal and that his neurological sensation was intact (Filing No. 13-8 at 85–86). Mr. Cottrell received the same nerve block procedure again on January 13, 2010.

In January 2010, Mr. Cottrell underwent consultative examinations (Filing No. 13-8 at 47, 54). Mr. Cottrell walked with a cane but his gait was steady, sustainable, and within normal limits. The examinations revealed normal strength and sensation, negative straight leg raising, and no difficulty picking up a coin, buttoning, and zipping. There was some evidence that Mr. Cottrell was experiencing pain in his back.

In March and June 2010, Andrew Spoljaric, M.D. ("Dr. Spoljaric") conducted examinations of Mr. Cottrell and observed that his gait and station were normal and sensation was intact (Filing No. 13-9 at 21–23).

On October 7, 2010, Dr. Klim examined Mr. Cottrell and noted that his gait and station were normal and sensation was grossly intact. He also noted that Mr. Cottrell experienced pain with lumbar extension and rotation, so he referred Mr. Cottrell to receive an MRI (Filing No. 13-9 at 42–43). Dr. Jeffrey Freeman performed Mr. Cottrell's MRI on October 19, 2010 (Filing No. 13-9 at 45). The MRI showed that "[n]othing is seen to suggest the cause of patient's back pain. No significant degenerative changes on this exam." *Id.* A January 24, 2011 EMG test showed normal results with no evidence of left or right lumbar radiculopathy and no polyneuropathy (Filing No. 13-9 at 17).

In early December 2010, Mr. Cottrell went to the hospital because he was experiencing chest pain and difficulty breathing. This was a result of pneumonia and a pleural effusion (a buildup of fluid between the layers of tissue that line the lungs and chest cavity). A chest tube was inserted to drain the fluid and relieve the chest pain. Mr. Cottrell remained in the hospital throughout that month.[4]

Mr. Cottrell's medical records show that he presented to Raj Clinics for psychiatric evaluations and treatment as early as 2004, and on a regular basis throughout 2009 and early 2010. At Raj Clinics, Mr. Cottrell underwent a mental health examination on February 25, 2009. Mr. Cottrell reported that he had been having problems with concentration, depression, and posttraumatic stress (Filing No. 13-8 at 20). He also noted that he had been trying to obtain Social Security benefits for the past four years. The mental status examination recorded that Mr. Cottrell took a long time to complete the medical history paperwork, but he was polite, coherent, relevant, and goal directed in his conversation. His thought processes were connected and logical. Mr.

---

[4] The ALJ explained that this "chest condition" was not a severe impairment because it did not last for a period of at least 12 months. Substantial evidence supports the ALJ's conclusion regarding the chest condition. Therefore, the Court will not give further attention to this medical incident.

Cottrell's memory for recent and remote events was intact, and he appeared to be functioning at an average range of intellectual functioning (Filing No. 13-8 at 21). He was diagnosed with major depressive disorder, attention deficit disorder, and PTSD, and was assigned a global assessment of function score of 50. Later treatment notes throughout 2009 from Raj Clinics indicate that Mr. Cottrell was manageable, doing well, and in many instances had no issues.

After filing for DIB and SSI, Mr. Cottrell was referred to Paul H. Roberts, Ph.D. ("Dr. Roberts") for a consultative examination on January 5, 2010. Dr. Roberts conducted a mental status examination and recorded that Mr. Cottrell's thought pattern was unremarkable and his speech appropriate, purposeful, and goal directed. He was pleasant and cooperative. Mr. Cottrell's comprehension and concentration were normal. His affect was mildly depressed but stable (Filing No. 13-8 at 47). Dr. Roberts diagnosed Mr. Cottrell with major depressive disorder, mild to moderate, and noted that post traumatic stressors were present, but they did not meet the full criteria for PTSD. Dr. Roberts assigned a global assessment of function score of 58 to Mr. Cottrell.

On January 26, 2010, Ann Lovko, Ph.D. ("Dr. Lovko") completed a mental residual functional capacity assessment for Mr. Cottrell. Dr. Lovko's assessment of Mr. Cottrell was consistent with Dr. Roberts's conclusions. On March 25, 2010, Dr. B. Randal Horton, Psy.D., performed a case analysis and reviewed the file evidence and Dr. Lovko's assessment. Dr. Horton affirmed Dr. Lovko's assessment.

When Dr. Spoljaric conducted examinations of Mr. Cottrell in March and June 2010, he observed that Mr. Cottrell was oriented to person, place, and time; his concentration, attention, and recent memory were fair; and his knowledge was within normal limits. Dr. Spoljaric noted that there was no evidence of significant dementia or cognitive impairment.

At the administrative hearing on March 16, 2011, Mr. Cottrell testified that he had not worked since 2005 due to pain in his back and hips. He also testified he experiences shortness of breath and arthritis in his knees and ankles. He testified that he can sit for approximately thirty to forty-five minutes and stand for up to ninety minutes at a time. Mr. Cottrell testified he has difficulty lifting his granddaughter who weighs approximately twenty-four pounds. He testified that he was taking medication for depression and had difficulty with short-term memory.

As part of his daily activities, Mr. Cottrell generally functions independently. He maintains personal hygiene and dresses himself without assistance. His wife reminds him to bathe and to take his medications. He also needs reminders of appointments. He generally does not cook, but he feeds himself. Mr. Cottrell helps with light household chores and does minimal shopping at stores. He and his wife have guardianship of a young girl. He helps her with homework. He often walks to the mailbox and visits with neighbors while outside. He goes outside to smoke cigarettes. He also smokes marijuana almost daily. Mr. Cottrell watches television, does word puzzles, and plays role-play video games frequently. On occasion, Mr. Cottrell hunts and fishes. He is able to drive and ride in a car and manage his finances.

## II.    <u>DISABILITY AND STANDARD OF REVIEW</u>

Under the Act, a claimant may be entitled to DIB or SSI only after he establishes that he is disabled. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous
7

work but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

The Commissioner employs a five-step sequential analysis to determine whether a claimant is disabled. At step one, if the claimant is engaged in substantial gainful activity, he is not disabled despite his medical condition and other factors. 20 C.F.R. § 416.920(a)(4)(i). At step two, if the claimant does not have a "severe" impairment that meets the durational requirement, he is not disabled. 20 C.F.R. § 416.920(a)(4)(ii). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, and whether the impairment meets the twelve month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 416.920(a)(4)(iii).

If the claimant's impairments do not meet or medically equal one of the impairments on the Listing of Impairments, then his residual functional capacity will be assessed and used for the fourth and fifth steps. Residual Functional Capacity ("RFC") is the "maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1); SSR 96-8p). At step four, if the claimant is able to perform his past relevant work, he is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). At the fifth and final step, it must be determined whether the claimant can perform any other work in the relevant economy, given his RFC and considering his age, education, and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). The claimant is not disabled if he can perform any other work in the relevant economy.

The combined effect of all the impairments of the claimant shall be considered throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The burden of proof is on the claimant for the first four steps; it then shifts to the Commissioner for the fifth step. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

Section 405(g) of the Act gives the court "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). In reviewing the ALJ's decision, this Court must uphold the ALJ's findings of fact if the findings are supported by substantial evidence and no error of law occurred. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Further, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). While the court reviews the ALJ's decision deferentially, the court cannot uphold an ALJ's decision if the decision "fails to mention highly pertinent evidence, . . . or that because of contradictions or missing premises fails to build a logical bridge between the facts of the case and the outcome." *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010) (citations omitted).

The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). The ALJ is required to articulate only a minimal, but legitimate, justification for her acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004).

### III. THE ALJ'S DECISION

The ALJ first determined that Mr. Cottrell met the insured status requirement of the Act through September 30, 2009. The ALJ then began the five-step analysis. At step one, the ALJ found that Mr. Cottrell has not engaged in substantial gainful activity since November 1, 2005, the alleged onset date of disability. At step two, the ALJ found that Mr. Cottrell has the following severe impairments: degenerative disc disease, organic mental disorder, affective disorder, and anxiety related disorder. The ALJ found that Mr. Cottrell's chest condition is not a severe impairment because Mr. Cottrell never raised the condition as being disabling and any limitations arising from the condition were not expected to last twelve months. At step three, the ALJ concluded that Mr. Cottrell does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

The ALJ then determined that Mr. Cottrell has an RFC to

> Occasionally lift and/or carry (including upward pulling) 20 lbs; Frequently lift and/or carry (including upward pulling) 10 lbs; Push and or pull (including operation of hand and/or foot controls) unlimited, other than as shown for lift and/or carry; Stand and/or walk (with normal breaks) for a total of about 6 hours in an 8 hour workday, and Sit (with normal breaks) for a total of about 6 hours in an 8-hour workday. (Exhibit 1A page 9). Additionally, claimant retains the ability to perform simple, unskilled work where contact with others is routine, superficial, and incidental to the work performed. Claimant requires a normal work break about every 2 hours and should not perform fast paced production work.

(Filing No. 13-2 at 22).

At step four, the ALJ determined that Mr. Cottrell is able to perform his past relevant work as a machine operator as it is actually and generally performed because that work does not require the performance of work-related activities precluded by his RFC. Because the ALJ determined at the fourth step that Mr. Cottrell is able to perform his past relevant work, the ALJ did not proceed

10

to step five in the disability analysis. The ALJ denied Mr. Cottrell's applications for DIB and SSI because of the determination that Mr. Cottrell is not disabled.

## IV. DISCUSSION

In his request for judicial review, Mr. Cottrell asserts that the ALJ improperly discredited the opinion of Dr. Smith, one of his treating physicians. He argues that the ALJ failed to consider and address the factors listed in 20 CFR 404.1527(c) and 416.927(c) when determining the weight to give to Dr. Smith's medical opinions.

Mr. Cottrell relies on the decision in *Lopez-Navarro v. Barnhart* for his argument that the ALJ erred in assigning little weight to Dr. Smith's opinions. There, the district court in the Eastern District of Wisconsin explained, "Treating source opinions must be given special consideration. If it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence, the ALJ must give it controlling weight." *Lopez-Navarro v. Barnhart*, 207 F. Supp. 2d 870, 885 (E.D. Wis. 2002) (internal citation and quotation marks omitted). The district court further explained,

> If the ALJ finds that the opinion does not warrant controlling weight, the ALJ may not simply reject the opinion. SSR 96-2p. He still must evaluate the opinion's weight by looking at the length, nature and extent of the plaintiff and physician's treatment relationship, the degree to which the opinion is supported by evidence, the opinion's consistency with the record as a whole, whether the doctor is a specialist, and "other factors." 20 C.F.R. § 404.1527(d). "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." SSR 96-2p. Regardless of the weight the ALJ ultimately gives the treating source opinion, the ALJ must "give good reasons" for his decision.

*Id.* Based on the fact that Dr. Smith was a treating physician, Mr. Cottrell asserts that the ALJ erred by not giving his opinion controlling weight. Specifically, Dr. Smith opined is that Mr. Cottrell has diffuse radiculopathy that results in a marked reduction in his RFC; he believes that Mr. Cottrell is unable to tolerate light work for even a single day because he can only occasionally

11

lift and carry up to ten pounds, sit for only two hours in an eight-hour workday, stand for one hour in an eight-hour workday, walk for one hour in an eight-hour workday, occasionally use his hands for grasping and fine manipulation, and never stoop, crouch, kneel, or crawl.

Mr. Cottrell argues that Dr. Smith's opinion should have been adopted and given controlling weight by the ALJ. "However, treating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance." SSR 96-5p; *see also* 20 C.F.R. § 404.1527(d)(3). "However, opinions from any medical source on issues reserved to the Commissioner must never be ignored. The adjudicator is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability . . . ." SSR 96-5p.

Mr. Cottrell is not arguing that the ALJ should have given controlling weight to Dr. Smith's medical opinion that Mr. Cottrell suffers from diffuse radiculopathy. Rather, Mr. Cottrell argues that the ALJ should have adopted Dr. Smith's opinions that Mr. Cottrell had a marked reduction in his residual functional capacity and that he had limitations in the length of time he could sit, stand, and walk, in the amount of weight he could lift or carry, and in the postural movements he could perform. However, these determinations—a claimant's RFC and ability to return to work—are reserved for the Commissioner.

Mr. Cottrell's own argument emphasizes the fact that Dr. Smith's opinion concerned a determination reserved for the Commissioner. He asserts, "Based on the October 29, 2009 opinion of Mr. Cottrell's treating physician, A.A. Smith, MD, Mr. Cottrell would be unable to work eight hour a day, five days a week on a sustained and continuous basis, and is therefore disabled." ([Filing No. 15 at 19](Filing No. 15 at 19).) RFC and disability are decisions for the Commissioner. Therefore, Dr.

Smith's opinions were not entitled to controlling weight.  However, the ALJ was not allowed to ignore Dr. Smith's opinions.

Upon review of the ALJ's decision, it is clear that the ALJ did not simply reject or completely ignore the opinions of Dr. Smith.  The ALJ considered and discussed at length the opinions of Dr. Smith and compared those opinions with the clinical and laboratory diagnostic evidence and the medical opinions of Dr. Klim, Dr. Spoljaric, Dr. Rudolph, and others.  For example, while Dr. Smith opined on October 29, 2009 that Mr. Cottrell could never lift or carry more than ten pounds and could only occasionally lift or carry up to ten pounds (Filing No. 13-9 at 88), Dr. Rudolph noted in January 2010 that Mr. Cottrell reported the ability to lift up to twenty-five pounds (Filing No. 13-8 at 53).

The only clinical or laboratory diagnostic testing that is consistent with Dr. Smith's opinion regarding any radiculopathy is the May 11, 2009 EMG test, which showed "bilateral irritative changes, multiple lumbosacral spinal nerve roots."  But this test was completed after Dr. Smith already had formulated his April 23, 2009 opinion, wherein he stated that Mr. Cottrell "may need EMG studies to further evaluate his symptoms."  Dr. Smith again gave an opinion on October 29, 2009, shortly after Mr. Cottrell filed his applications for DIB and SSI, wherein he adopted his April 2009 opinion and noted that a supporting EMG test had been conducted in May 2009.

However, the later January 24, 2011 EMG test showed normal results with no evidence of left or right lumbar radiculopathy and no polyneuropathy.  This later EMG test contradicts Dr. Smith's opinion.  Other clinical and laboratory diagnostic testing (MRIs and x-rays) also contradict Dr. Smith's opinion.  Because Dr. Smith's opinions were inconsistent with the record as a whole, with most of the objective clinical and laboratory diagnostic testing, and with much of the other medical opinion evidence, the ALJ gave little weight to Dr. Smith's opinions.  The ALJ did not

13

err in doing so. This Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman*, 546 F.3d at 462.

The ALJ addressed the weight he gave to each of the expert and non-expert opinions and the reasons for his decisions. The ALJ's determinations were supported by sufficient evidence, and any contrary evidence was adequately considered and addressed. Having determined that Mr. Cottrell has an RFC to do his past relevant work as a machine operator, the ALJ concluded that Mr. Cottrell is not disabled.

## V. CONCLUSION

For the reasons set forth above, the final decision of the Commissioner is **AFFIRMED**. Mr. Cottrell's appeal is **DISMISSED**.

**SO ORDERED.**

Date: 3/31/2015

_____
TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Charles Julian Myers
cmyers7943@sbcglobal.net

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov